## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

05 10031 DPW

LOUIS G. RASETTA and JOHN J. SHAUGHNESSY,
as they are TRUSTEES, INTERNATIONAL UNION
OF OPERATING ENGINEERS LOCAL 4 HEALTH
AND WELFARE, PENSION AND ANNUITY AND
ANNUITY SAVINGS FUNDS, and LOUIS G.
RASETTA and CHRISTOPHER BARLETTA, as they
are TRUSTEES, HOISTING AND PORTABLE
ENGINEERS LOCAL 4 APPRENTICE AND
TRAINING FUNDS and the INTERNATIONAL
UNION OF OPERATING ENGINEERS LOCAL 4,
  Plaintiffs

vs.

MOORE'S CRANE RENTAL CORP. and HADLEY
MOORE,
  Defendants

and

KENNEBUNK SAVINGS BANK,
  Trustee

MAGISTRATE JUDGE RBC

RECEIPT # 61258
AMOUNT $ 150
SUMMONS ISSUED YES
C.A. NO. LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. ror
DATE 1/6/05

## COMPLAINT

## NATURE OF ACTION

1.      This is an action brought pursuant to §§502 and 515 of the Employee Retirement

Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132(a)(3) and (d)(1) and

1145 and §301 of the Labor Management Relations Act, 29 U.S.C. §185 by employee benefit

plans and a labor union to enforce the obligations to make contributions and pay interest due to

such plans due under the terms of a collective bargaining agreement and the plans.

## JURISDICTION

2.     The Court has exclusive jurisdiction of this action pursuant to §502(a), (e) and (f) of ERISA, 29 U.S.C. §§1132(a), (e) and (f), without respect to the amount in controversy or the citizenship of the parties.

## PARTIES

3.     Plaintiffs Louis G. Rasetta and John J. Shaughnessy are Trustees of the International Union of Operating Engineers Local 4 Health and Welfare Fund. The International Union of Operating Engineers Local 4 Health and Welfare Fund is an "employee welfare benefit plan" within the meaning of §3(3) of ERISA, 29 U.S.C. §1002(3). The Fund is administered at 177 Bedford Street, Lexington, Massachusetts, within this judicial district.

4.     Plaintiffs Louis G. Rasetta and John J. Shaughnessy are Trustees of the International Union of Operating Engineers Local 4 Pension Fund. The International Union of Operating Engineers Local 4 Pension Fund is an "employee pension benefit plan" within the meaning of §3(2) of ERISA, 29 U.S.C. §1002(2)(A). The Fund is administered at 177 Bedford Street, Lexington, Massachusetts, within this judicial district.

5.     Plaintiffs Louis G. Rasetta and John J. Shaughnessy are Trustees of the International Union of Operating Engineers Local 4 Annuity Fund. The International Union of Operating Engineers Local 4 Annuity Fund is an "employee pension benefit plan" within the meaning of §3(2)(A) of ERISA, 29 U.S.C. §1002(2)(A). The Fund is administered at 177 Bedford Street, Lexington, Massachusetts, within this judicial district.

6.     Plaintiffs Louis G. Rasetta and Christopher Barletta are Trustees of the Hoisting and Portable Engineers Local 4 Apprenticeship and Training Fund. The Hoisting and Portable Engineers Local 4 Apprenticeship and Training Fund is an "employee welfare benefit plan"

2

within the meaning of §3(1) of ERISA, 29 U.S.C. §1002(1). The Fund is administered at One Engineers Way, Canton, Massachusetts, within this judicial district.

7.    The Health and Welfare, Pension, Annuity, Apprenticeship and Training Funds are multi-employer plans within the meaning of §3(37) of ERISA, 29 U.S.C. §1002(37). They are hereinafter collectively referred to as "the Funds."

8.    The International Union of Operating Engineers Local 4 is a labor organization within the meaning of §301 of the LMRA, 29 U.S. C. §185. The Union is administered at 53 Trotter Drive, Medway, Massachusetts, within this judicial district.

9.    Defendant Moore's Crane Rental Corp. (hereinafter "Moore's" or "the Employer") is a New Hampshire corporation with a principal place of business at 33 Littleworth Road, Dover, New Hampshire, and is an employer engaged in commerce within the meaning of §3(5) and (12) of ERISA, 29 U.S.C. §1002(5) and (12).

10.    Defendant Hadley Moore (hereinafter "Moore") is an individual residing at 33 Littleworth Road, Dover, New Hampshire. Upon information and belief, Moore is the owner of Moore's and exercises control and discretion over the payroll of Moore's including any and all decisions regarding the collection and disbursement of any payroll deductions authorized by the employees of Moore's. As such, Moore is a fiduciary to the International Union of Operating Engineers Local 4 Annuity and Annuity & Savings 401(k) Fund as defined by § 3(21) of ERISA, 29 U.S.C. §1002(21).

11.    On information and belief, Kennebunk Savings Bank is a banking institution holding assets of the defendant.

## GENERAL ALLEGATIONS OF FACT

12.     On or about October 12, 2002, defendant Moore's agreed in writing to be bound to the terms of a collective bargaining agreement with the International Union of Operating Engineers Local 4, effective from October, 2002 through May, 2004 ("the Agreement")  and to any successor agreements.  A copy of Moore's signed agreement ("Agreement") is attached hereto as Exhibit A.

13.     The Agreement requires Moore's to make contributions to Plaintiff Funds and to the Social Action Committee, in amounts set forth in the Agreement, for each payroll hour and proportionately for each part of such an hour for each person covered by the Agreement and employed on construction projects on which the Company is engaged.

14.     Pursuant to the Agreement, Moore's is also obligated to deduct and remit a negotiated percentage of the gross wage package, before taxes, for union dues.

15.     Further, the Agreement obligates Moore's, upon written authorization by its employees, to withhold an amount from the employee's gross wage, before taxes, for deposit in the Annuity & Savings 401(k) Fund.

## COUNT I - VIOLATION OF ERISA -
## DELINQUENT CONTRIBUTIONS AND INTEREST

16.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1-15 supra.

17.     According to the reports and payments Moore's has submitted to the Funds, it failed to pay certain health and welfare and annuity contributions during the period December, 2002 through December, 2003 and owes $3,245.86 as a result.  Moore's also failed to pay any contributions for the period July through November, 2004 and, as a result, now owes $75,464.00

in delinquent contributions for that period, together with $7,262.04 in interest due thereon.

Moore's also owes $14,532.02 in interest on contributions paid late.

18.    By letter dated November 30, 2004, the Funds sought payment of these delinquent contributions and interest.

19.    To date, Moore's has failed to pay the Funds the contributions and interest that remain due and owing.

20.    The failure of Moore's to make contributions on behalf of all covered employees as required by the terms of the Funds and the collective bargaining agreements violates §515 of ERISA, 29 U.S.C. §1145.

21.    Absent an order from this Court, the defendant will continue to refuse to pay the monies it owes to the Funds, as determined at the audit, and the Funds and their participants will be irreparably damaged.

22.    A copy of this Complaint is being served upon the Secretary of Labor and the Secretary of the Treasury by certified mail as required by §502(h) of ERISA, 29 U.S.C. §1132(h).

### COUNT II - VIOLATIONS OF LMRA - DUES AND SAC

23.    Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1-22 supra.

24.    According to its remittance reports, Moore's deducted dues from its employees' paychecks during the period July through November, 2004 and failed to remit them to the Union. As a result, it owes the Union $3,532.15 in dues for this period.  Moore's also owes $124.09 in dues it deducted but failed to pay during the period December, 2002 through December, 2003.

25.    Moore's is also obligated under its collective bargaining agreement to make contributions to the SAC Fund. According to its remittance reports, it owes the Funds $384.13 in contributions to the SAC Fund for the period July through November, 2004. It also owes $129.05 in contributions to the SAC Fund that it failed to pay between December, 2002 and December, 2003.

26.    The failure of Moore's to remit the dues it deducted from its employees' wages, to contribute to the SAC Fund, to make contributions on behalf of all covered employees and to pay interest as required by the terms of the collective bargaining agreement violates §301 of the Labor Management Relations Act, 29 U.S.C. §185.

## COUNT III - BREACH OF FIDUCIARY DUTY
## BY DEFENDANT HADLEY MOORE

27.    Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1-26 supra.

28.    Between December, 2002 and December, 2003 Moore's deducted $2,576.50 from the pay of employee Gerald Glidden but forwarded only $2,304.45 to the 401(k) Fund, leaving a balance due of $272.05.

29.    When employees of Moore's, including Gerald Glidden, elected to defer a portion of their pre-tax wages into the Annuity & Savings 401(k) Fund, pursuant to Part Two - Article XI, Section 1 of the Agreement, those deferred wages became plan assets within the meaning of 29 CFR 2510.3-102.

30.    By exercising discretion and control over these plan assets, Defendant Moore is a fiduciary within the meaning of §3(21) of ERISA, 29 U.S.C. §1002(21).

31.    Moore is obliged to discharge his duties as a fiduciary to the Annuity & Savings 401(k) Fund solely in the interests of the participants and beneficiaries of the Fund.

32.    By retaining plan assets, and upon information and belief, converting those plan assets to the use of himself and/or Moore's or others, Moore has breached his fiduciary duty to the Plaintiff Annuity & Savings 401(k) Fund in violation of Sections 404 and 409 of ERISA, 29 U.S.C. §§ 1104, 1109.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request this Court to grant the following relief:

a.    Order the attachment of the machinery, inventory and accounts receivable of defendant Moore's;

b.    Enter a preliminary and permanent injunction enjoining Moore's from refusing or failing to make contributions and pay interest to Plaintiff Funds and to remit dues and SAC contributions to Plaintiff Union;

c.    Enter a preliminary and permanent injunction enjoining Moore from refusing or failing to remit 401(k) payments and interest to Plaintiff Annuity and Savings Fund;

d.    Enter judgment on Count I in favor of the Plaintiff Funds in the amount of $75,464.00, representing the delinquent contributions owed for July through November, 2004 plus any additional amounts determined by the Court to be owed by Moore's or which may become due during the pendency of this action, together with interest on the unpaid contributions at the rate prescribed under §6621 of the Internal Revenue Code, liquidated damages in an amount equal to 20 percent of the total of unpaid contributions or the total interest owed, whichever is greater, reasonable attorneys' fees, and costs, all pursuant to 29 U.S.C. §1132(g)(2);

7

e.    Enter judgment on Count II in favor of Plaintiff Union in the amount of $3,656.24 in unpaid dues and $513.18 in delinquent SAC contributions;

f.    Enter judgment on Count III in favor of the Plaintiff Annuity and Savings Fund and in the amount of $252.00 for all deferred amounts deducted from the wages of employee Glidden of Moore's which were authorized as elective deferrals into the 401(k) Plan for the months of December, 2002 through December, 2003, and all deferrals which became due thereafter up to the date of judgment, along with interest, liquidated damages, reasonable attorneys' fees, and costs, all pursuant to 29 U.S.C. §1132(g)(2);

g.    Enter judgment in favor of the Plaintiff Funds for all losses to the Annuity & Savings 401(k) Fund resulting from Moore's breach of fiduciary duty, as provided by 29 U.S.C. §1109(a); and

h.    Such further and other relief as this Court deem appropriate.

Respectfully submitted,

LOUIS G. RASETTA and JOHN J. SHAUGHNESSY, as they are TRUSTEES, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4 HEALTH AND WELFARE FUND, et al,

By their attorneys,

_Anne R. Sills_

Anne R. Sills, Esquire
BBO #546576
Gregory A. Geiman, Esquire
BBO #655207
Segal, Roitman & Coleman
11 Beacon Street, Suite #500
Boston, MA 02108
(617) 742-0208

Dated: January 5, 2005
ARS/ars&ts
3118 04-480/complt.doc

8


COPY

# AGREEMENT

### Between

# *MOORES CRANE RENTAL, CORP.*

### and



### The

# INTERNATIONAL UNION of OPERATING ENGINEERS

# LOCAL 4 AND ITS BRANCHES

October 12, 2002  -  May 31, 2004

COPY

## TITLE

AGREEMENT between MOORES CRANE RENTAL, CORP. referred to as the "Company" whose signature is attached hereto and the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4 AND ITS BRANCHES, hereinafter referred to as the "Union."

This Agreement made this 12th day of October 2002, and between the Company and the Union, and to go into effect on the date first written above, and continue in effect until May 31, 2004. If neither party to this Agreement gives notice in writing to the other party on or before April 1, 2004, that it desires a change, this Agreement will continue in effect until May 31, 2005, and so on each year thereafter, unless on or before April 1st of each year a notice is given desiring a change by either party.

## ARTICLE I
## PURPOSES

The general purpose of this Agreement is to establish mutually satisfactory relations between the Union, the Company and the employees, provide machinery for the prompt settlement of grievances and maintain satisfactory working conditions, hours of work and wages for those employees covered by this Agreement.

## ARTICLE II
## JURISDICTION

It is agreed that the Union has jurisdiction over hoisting equipment within the control of the Company. In the event the Company secures rentals where a Project Labor Agreement (PLA) has been negotiated, the provisions of the PLA and/or the current Collective Bargaining Agreement titled "Building Agreement between Maine - New Hampshire Associations - Independent Employers," shall apply.

## ARTICLE III
## TERRITORIAL JURISDICTION

The geographical area of this Agreement shall be the state of Maine and the five (5) easterly counties of New Hampshire consisting of Coos, Carroll, Strafford, Belknap, and Rockingham Counties.

## ARTICLE IV
## UNION SECURITY

1.      The Union is recognized as the sole and exclusive agency and representative of the employees covered by this Agreement for the purpose of collective bargaining with respect to wages, hours of work, and other conditions of employment and for the purpose also of other mutual aid and protection. The Company shall not make any agreement in conflict with the provisions of this Agreement.

1

COPY Subject to applicable existing Federal and State laws, the Company recognizes that the Union is the established and prime source of skilled and dependable labor necessary or required to perform the kind of work covered within its craft jurisdiction and that the Union is normally ready, able, and willing to supply such kind and quality of labor, and the Company recognizes that all labor to be hired shall be of a kind and quality able to work efficiently with labor employed, or to be employed, on work.

2.1     The Company agrees that on occasion of need for such labor, with the exception of new hires for the position of "Trainee" as outlined in Section 3.1 of this Article, it shall notify the Union of the need for qualified workers in the classifications within its craft jurisdiction.  If the Union is unable to supply the employees required from Local 4 or other Locals of the International Union of Operating Engineers, within forty-eight (48) hours, excluding Saturdays, Sundays, and Holidays, the Employer may hire elsewhere, provided such personnel hired shall make application for membership not later than the seventh day from the date of employment and sign an authorization for deduction of dues (if new employee is a non-member). This may be done through the Business Representative, Union Steward or Union Office.  All employees must maintain their membership in good standing in the Union during the term of this agreement.

3.      All employees shall be hired by the Company.  It is agreed that there will be no discrimination by the Union or the Company against any employee because of race, color, sex, ancestry or national origin, age, physical r mental disability of a qualified individual, previous assertion of workers' compensation rights, actions protected by Maine Whistle-blowers Protection Act, or other status protected by law, or because of the exercise in good faith of rights under the equal employment laws.  The parties to this agreement agree to provide reasonable accommodation to qualified individuals with disabilities and to actively promote and adhere to the intent and purpose of all applicable Maine, New Hampshire and federal statutes promoting equal employment opportunity and prohibiting discrimination in employment. The Company will provide reasonable accommodations to person with disabilities, notwithstanding any other provision of the Agreement.  The parties to this Agreement agree to actively promote and adhere to the intent and purpose of the Civil Rights Act of 1964.

3.1     In order to ensure the continued availability of qualified employees, the Employer may, from time to time, desire to hire employees under the classification of "Trainee". In this situation, the Employer may recruit and hire for this position directly, using established selection criteria.  Trainees who are already members of the Union will be given an equal opportunity to compete for available positions.  Once hired, a new Trainee who is not already a member of the International Union of Operating Engineers, Local 4, shall sign an authorization for the deduction of Union dues after the seventh day from the date of employment, and will be allowed to complete the required sixty day probationary period before commencing payment of Initiation Fees. Trainees may be dismissed during this interval without protest or grievance by the Union.  At the completion of the probationary period they shall be considered regular employees, and shall have fringe benefits remitted in accordance with their date of hire.

4.      The Union agrees that it will not unreasonably withhold membership to any new employees.

5.      The Company agrees in the event it shall subcontract any item of work contained in its prime contract which is within the craft jurisdiction of the Union, and which is to be performed on the job site proper, it shall provide in the subcontract that the subcontractor shall assume the terms and conditions of this Agreement.



## ARTICLE V
## HOURS

1.  The regular schedule for employees shall require forty (40) hours a week consisting of five (5) consecutive eight (8) hour days from Monday to Friday of each week, starting not earlier than 6:00 a.m. and ending not later than 4:30, inclusive of a one-half hour unpaid lunch period.

1.1  Engineers and assistant engineers/oilers afternoon work schedule shall coincide with the schedule of the majority of the trades served on the job.

1.2  Work performed before or beyond the established (8) hour workday shall be known as "overtime" and shall be paid for at time and one-half (except Sundays and Holidays, which shall be paid at double time rate).

1.3  Engineers and assistant engineers/oilers in the rental yard may be employed on a daily basis. An Employer desiring to change from daily rate to weekly rate shall change all engineers and assistant engineers/oiler in his employ and may not change again for a four week period. Engineers and assistant engineers/oilers assigned on a daily basis shall receive an 11% wage differential.

1.4  Mechanics, and engineers and assistant engineers/oilers if the machine is rented to a job site in the secondary market for not less than five (5) consecutive work days, may be assigned weekly rate. Upon returning to the yard the crane crew shall assume the daily/weekly provisions then in place.

2.  Employees may, at the direction of the Company, be required to perform start-up procedures, equipment maintenance, pre-operations inspections and job preparation, prior to the start of their regular scheduled shift. The additional time will be compensated at the employee's regular rate of overtime.

3.  Unless otherwise directed by the Company, employees will report for work each day at their assigned starting time. These hours may be adjusted to meet special conditions and/or ordinances, and/or conditions mandated by the owner or client.

4.  Machine operators will be responsible for general maintenance (daily maintenance and periodical servicing as defined by the Company and the manufacturer) and the overall cleanliness of any machine they are operating.

5.  Operators must report non-serviceable equipment.

6.  Except when assigned on a shift or a statutory holiday, an employee shall be paid overtime rate for all hours worked by them, at the request of the company, outside of their regular hours of work as mentioned in Article V, Section 1.

7.  An employee, called back to work after leaving the company premises, shall receive one and one-half times (1 1/2) the regular hourly rate, with a minimum of four (4) hours paid, except during a statutory holiday. Call-in periods cannot be overlapped.

8.  The parties recognize that "off shift" work may be required without the need for a first (or second) shift. In such event the employees shall receive a shift differential of one (1) dollar an hour.

3

NOV-09-2004  16:15



## ARTICLE VI
## CLASSIFICATIONS AND WAGE RATES

1.    The job classification in each department shall be set out in Article XXI.

2.    The wage rate in each job classification shall be as set out in Article XXIII.

3.    The Company shall, from time to time as it sees fit, review the performance of its employees in each job classification.  On the basis of qualifications, experience, ability, performance and the capacity to perform all phases of work within a promotional Department, employees will be selected for advancement to a higher job classification within their respective promotional department, based on the employee fulfilling the requirements for such classification as determined by the Company.  Failure to continue to meet the requirements of their present classification may result in being reclassified at a lower classification within their respective promotional department.

4.    The Company shall provide employees, on each pay day, an itemized statement of wages indicating hours, rate, and deductions. Direct deposit of the employees pay is encouraged.

## ARTICLE VII
## SATURDAYS, SUNDAYS and HOLIDAYS

1.    Engineers and apprentice engineers/oilers, when ordered out on a Saturday, Sunday or Holiday shift, shall receive eight (8) hours work at the applicable overtime rate, unless the inclement weather clause conditions as follow apply.

2.    In the event that members of the Union are ordered out for work on a Saturday, Sunday or Holiday, and due to inclement weather only are unable to work, they shall be paid as follows:

2.1    For reporting but not starting, they shall receive two hours at the applicable overtime rate.

2.2    For starting work, they shall receive no less than four (4) hours at the applicable overtime rate.

2.3    For work continuing beyond the fourth hour, they shall receive a minimum of eight (8) hours at the applicable overtime rate.

## ARTICLE VIII
## HOLIDAYS and LEAVE OF ABSENCE

1.    The holidays which are to be observed in this Agreement are as follows: New Year's Day, President's Day, Memorial Day, July 4th, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day, or days on which these holidays are observed.

2.    An employee shall receive eight (8) hours straight time pay for a holiday not worked, including a holiday falling on a Saturday.

4

An employee who is laid off shall receive holiday pay for a holiday, including a holiday falling on Saturday, if he has worked three (3) days in the calendar week in which the holiday falls.

4.     No employees shall be eligible for holiday pay when they fail without cause, to work the regular work day preceding the holiday or the regular work day following the holiday.

5.     An absence from work of three (3) or more consecutive days without notice will automatically mean termination.

6.     An employee absent from work due to illness, must present a doctor's certificate to his supervisor if requested to do so by the Company.

7.     All employees covered by this agreement shall be granted, upon request, a maximum of three (3) days' leave of absence without loss of pay in case of death of a parent, spouse, brother, sister, child, grandfather, grandmother, mother-in-law, father-in-law, sister-in-law, brother-in-law, grandmother-in-law, grandfather-in-law; for the purpose of making funeral arrangements and/or attending funeral.

8.     The company will provide such additional family and medical leave as may be required by law.

## ARTICLE IX
## TRAVEL MILEAGE - OVERTIME - MEALS

1.     Each employee is responsible for providing their own transportation to and from their particular work site (main shop included) each day.  The Company may from time to time provide transportation in specific cases if it is expedient and convenient to the Company.

2.     The mileage rate paid to employees will be the standard IRS allowance (currently 36 cents per mile).

3.     The Company expects that when multiple person crews are assigned to work out of town the number of passengers per vehicle will be maximized in order to reduce the overall travel costs.

4.     **The Company will pay mileage when:**

4.1    The employee travels in excess of twenty (20) miles via the shortest route from the local branch premises to the job site with their own automobile.

4.2    The employee travels in excess of twenty (20) miles to a specific work center from the place where an employee receives their room and board with their own automobile.

4.3    The distance from their residence to the job site is greater than the distance from their residence to their home terminal, they will be paid the mileage rate for the difference.

4.4    They are assigned to a job site where room and board is paid by the Company they will be paid mileage to the job site once at the beginning and once at the end of the job.

5

5.    The Company will not pay mileage:

5.1    To and from a specified work center provided such work center is within twenty (20) miles from the place where an employee receives their room and board;

5.2    When an operator is assigned to a job site where room and board is paid by the Company and when such employee is not working on a weekend the Company shall, at its discretion, either arrange for and pay the employee's room and board at the area of the site for the weekend or arrange transportation home for such employee for the weekend.

5.3    When an employee will not receive mileage when traveling on the Company's equipment.

6.    The Company has the right to assign an employee to a job site out of town and expect them to be on the job site for the start of their regular shift.

7.    An employee, required to stay away from home overnight, shall be compensated for reasonable room and board costs. Employees receiving such subsistence shall not receive mileage except at the start and end of the job.

8.    **Employees are responsible for their own meals:**

8.1    During regular work shifts;

8.2    On scheduled jobs involving night or shift work;

8.3    On Saturday's, Sunday's or holidays provided they are advised prior to reporting to work;

9.    No room and board will be paid to an employee who is sent to work in an area where they reside.

10.    Where a room is paid by the Company, the cost of such room will be reasonable for the area and will be pre-approved by management.  Room costs will not be reimbursed unless proper vouchers are submitted.

## ARTICLE X
## OVERLOADED OR IMPROPERLY REGISTERED VEHICLES

The Company will not knowingly instruct an employee to perform acts which are in violation of any Federal, State, or Municipal laws.

## ARTICLE XI
## HEALTH & WELFARE, PENSION, AND ANNUITY & SAVINGS FUNDS

1.    The Company agrees to, and shall pay and contribute, an amount equal to that shown under "Schedule of Wages" in this Agreement to the following Funds:

1.1    International Union of Operating Engineers Local 4 Health and Welfare Fund, hereinafter referred to as the "Welfare Fund."

COPY

1.2    International Union of Operating Engineers Local 4 Pension Fund, hereinafter referred to as the "**Pension Fund.**"

1.3    International Union of Operating Engineers Local 4 Annuity & Savings Fund, hereinafter referred to as the "**Annuity Fund.**"

1.4    Hoisting and Portable Engineers Local 4 Apprentice and Training Program, hereinafter referred to as the "**Apprentice Program Fund.**"

2.    The respective rates per hour as shown in the "**Schedule of Wages**" in the Agreement shall be paid for each payroll hour (with the exception of Annuity contributions, an overtime hour for this purpose shall be considered a single hour) and proportionately for each part of such an hour for each person covered by this Agreement and employed on construction projects on which the Company shall be engaged or otherwise in the hire of the Company. Overtime contributions to the Annuity Fund shall be paid at the rate of time and one-half for all classifications of overtime.

2.1    Upon proper written authorization on a form furnished by the Local Union, the Company shall withhold from the employee's gross wage before any deduction for taxes, an amount, as established from time to time by the Annuity Trustees, for deposit in the "**Annuity & Savings (401(k) Plan,**" a Retirement Plan intended to be qualified under the Employee Retirement Income Security Act of 1974 (ERISA).

3.    Notwithstanding all of the above, the obligation to contribute to the Health & Welfare, Pension and Training Funds (but not the Annuity), for each person covered by this Agreement, shall be limited to 1,880 hours in a calendar year. On or before the 10th day of each month, said payment shall be due and payable for all such payroll periods ending the next preceding month.

4.    The Company agrees that the obligations to make payments shall be on a parity with and enforceable, with respect to each Fund, as the obligation to pay wages, and this inclusive of the priorities incident to and in proceedings for the relief of debtors, and this Article shall bind all legal representatives, successors, and assigns of an Company.

5.    The Trustees, or their representative when authorized by the Trustees in each case, shall have the right to inspect at all reasonable times, the individual payroll records and such other records of the Company as are deemed necessary and pertinent to determine whether the Company is making due and full payment of its Company Contributions.

6.    Failure of the Company to comply with this Article or any part thereof may be treated by the Union as a breach of the working Agreement between the Union and the Company, and notwithstanding other provisions of this Agreement (Arbitration, Article XX) or otherwise to the contrary, immediate work stoppage and use of picket lines against such defaulting Company are permitted. Any cost, inclusive of legal fees, incurred by the Union in the collection of obligations to make payment due the Welfare, Pension, Annuity and Apprentice Program Funds shall be borne by the defaulting Company.

7.    Notwithstanding any termination or cancellation under this Agreement or otherwise, the obligations of this Article and of the several Declarations of Trust shall be deemed continuous and the Health and Welfare Fund, Pension Fund, Annuity Fund and Apprentice Program Fund shall not be discontinued pending negotiations of a new Agreement.

The Welfare, Pension, Annuity and Apprentice Program Funds shall be respectively administered by three (3) Trustees appointed and/or elected by the Union and three (3) Trustees appointed by the Associations (unless it shall be mutually agreed to decrease the number of trustees or to consolidate the Welfare Fund, Pension Fund, Annuity Fund and Apprentice Program Fund with similar funds) under one or more Agreements and Declarations of Trust as they are or shall be executed by such Trustees.

9.    The Welfare Fund shall be used for the purpose of providing Health and Welfare benefits for Employees covered by this Agreement and their dependents by means of insurance or otherwise in the discretion of the Trustees.

10.    The Pension Fund shall be used for the purpose of providing Pension benefits for Employees covered by this Agreement by means of insurance or otherwise in the discretion of the Trustees.

11.    The Annuity Fund shall be used for the purpose of providing pension benefits for employees covered by this Agreement by means of Annuity contracts or otherwise in the discretion of the Trustees.

12.    The Apprentice Program Fund shall be used for the purpose of providing and defraying costs of apprenticeship or other training programs.


## ARTICLE XII
## DUES DEDUCTION

1.    It is agreed that the Company shall deduct one and one-quarter (1¼%) percent from the gross wage and benefit package before any deduction for taxes, for each payroll hour as defined in Article XI, provided the employee has executed a written authorization for such deduction. All such deductions shall be reported monthly on one (1) form along with all the other Funds provided for in the Agreement. One (1) check covering the total of all the Funds shall be sent along with the one (1) form in accordance with the provisions of Article XI.

2.    It shall be the sole responsibility of the Union to procure, pursuant to the provisions of Section 302 (c) of the Labor-Management Relations Act of 1947, the signed individual authorization of every employee subject to this Agreement. The Union shall indemnify and hold harmless the Company from any claims arising under this Article including the furnishing of counsel to defend against any such actions.


## ARTICLE XIII
## SOCIAL and POLITICAL ACTION COMMITTEES

1.    The Social and Political Action Committees (SAC/PAC) Funds, administered by the Union shall be funded by a voluntary five (5¢) cents per hour payroll deduction, the purpose of which shall be to enable the Union to participate more fully in matters affecting the welfare of its members. It is agreed that the Company shall deduct five (5¢) from gross wages before any deduction for taxes for each payroll hour as defined in Article XI, provided the employee has executed a written authorization for such deduction. All such deductions shall be reported monthly on one (1) form along with all the other Funds provided for in the Agreement. One (1) check covering the total of all the Funds shall be sent along with the one (1) form in accordance with the provisions of Article XI.

COPY It shall be the sole responsibility of the Union to procure, pursuant to the provisions of Section 302 (c) of the Labor-Management Relations Act of 1947, the signed individual authorization of every employee subject to this Agreement. The Union shall indemnify and hold harmless the Company from any claims arising under this Article including the furnishing of counsel to defend against any such actions.

## ARTICLE XIV
## MANAGEMENT RIGHTS

1.    The Union agrees and acknowledges that the Employer has the exclusive right to manage the business and to exercise such right without restriction, save and except such prerogatives of Management as may be specifically restricted by the terms and conditions of this Agreement. Without restricting the generality of the foregoing paragraph, it is the exclusive function of the Employer:

2.    To determine qualifications, classify, transfer, hire, direct, promote, demote, lay-off, discipline and discharge employees for just cause and to increase and decrease working forces in accordance with the terms of this agreement.

3.    To determine the materials to be used, services to be purchased, design of the products to be handled, facilities and equipment required, scheduling of work and location of equipment.

4.    To determine the rules and regulations to be observed by employees, violations of which may be the cause for discipline and may include discharge.

5.    To determine whether and to what extent the employers operations shall be continued, discontinued, expanded, curtailed or abolished, in whole or in part.

6.    To implement employee testing for alcohol and for substances of abuse, after consultation with the Union, as permitted by federal and state law. In addition to adhering to the Department of Transportation requirements for CDL licensing, it is intended that these testing provisions will include, but not be limited to, pre-employment, for cause and post accident testing.

7.    The Company may promulgate and post such other reasonable rules and regulations as may be necessary or required to maintain a safe working environment.

## ARTICLE XV
## STRIKES AND LOCKOUTS

1.    In view of the grievance and arbitration procedures provided in this Agreement, it is agreed by the Union that there will be no strikes or work stoppages during the term of the Agreement and the Employer agrees that during the term of this Agreement there shall be no lockouts.

2.    In the event of such strike, work stoppage, slowdown, or other interference, the Union shall promptly order and instruct its members to cease such strike, work stoppage or slowdown, and shall use all means within its power to end the same at the earliest possible time.

3.    Participation in a strike, work stoppage, slowdown or other interference with the orderly flow of work, prohibited by this Article or other provisions of the Agreement, shall constitute just cause for discipline including discharge.

9



**ARTICLE XVI**
**PROBATION**

1.    New employees shall be considered as probationary until they have served sixty (60) days (accumulated in any twelve (12) month period) during which time the new employee's performance is periodically reviewed by their direct supervisor who, in consultation with Management determines whether the new employee is able to function effectively in the work environment.

1.1    If the employee is found not to possess the job skills necessary, not to adhere to Company rules and/or not be able to get along with his supervisors or peers, then the employee will be dismissed within the sixty (60) day period without benefit of appeal or grievance by the Union.

1.2    The following classifications of new employees are eligible for probation:

    i.     a newly hired employee;
    ii.    a former employee rehired after a separation of more than one calendar year;
    iii.   a former employee who has not gone through a probationary period previously;
    iv.    a former employee who terminated his employment with the Company;
    v.     a former employee rehired after having been discharged for just cause.

2.    In all cases of promotion to a higher paid job or classification in the bargaining unit, reduction of work forces and recall after lay-off, the following factors shall be considered by the Company:

    i.     customer service orientation and professional conduct;
    ii.    skill and ability;
    iii.   physical fitness as determined by a doctor;

3.    Issues that arise concerning the criteria for acceptable customer service orientation, professional conduct, skill, ability and physical fitness, shall be fully investigated and discussed between the Union and the Employer.

3.1    Any employee temporarily assigned to duties outside their present job classification shall not have their basic rate changed unless they are re-classified by the classification board.

3.2    When an employee is assigned to a higher job classification for which they have already been deemed qualified by the Company, they shall continue at their former classification rate for a period of three (3) days. If they remain in the higher classification after the three (3) day period, their rate will be changed to reflect that classification.

3.3    When suspended for just cause, employees lose all rights to wages and salary during the period of suspension. When employees are discharged or voluntarily resigned, they immediately lose all employee rights.

3.4    The Company agrees to establish a board made up of two (2) Company representatives and two (2) Union representatives and one (1) disinterested person to classify employees.

3.5    If the Union is unable to supply such personnel within forty-eight (48) hours, the Company may hire any person resident in the area serviced, provided that such person must join the Union in accordance with the provisions of Article IV, Section 2.1.



## ARTICLE XVII
## COMPANY REGULATIONS AND WORK RULES

1.    All shop employees will keep their work area clean and in good order.

2.    Operator shall obtain a customer's signature on time tickets before leaving jobs.

3.    Heavy equipment operators must hold a valid chauffeur's (CDL) license, the class depending upon the type of machinery to be operated.

4.    Should an operator lose their CDL, they will be re-classed to a position where a CDL is not required if such a position is available and provided they are, in the opinion of the Company, qualified to do the job.

5.    During slack periods, employees will be temporarily assigned to various jobs and/or pieces of equipment other than those for which they are classed, depending on the employee's individual skills. Employees so assigned must ensure that all daily maintenance and cleaning is performed.

6.    Employees are encouraged to learn all phases of work within their promotional division. Therefore, to accomplish this, when time and conditions permit, the supervisor may arrange for the employees to train temporarily under the guidance of the operator in charge of a specific piece of equipment, who may act as an instructor while maintaining the responsibility of their area and equipment. This temporary training will not affect the rates of pay of the employees concerned.

7.    If an operator refuses to go with the machine assigned to them, for reasons other than sickness or road-worthiness (as determined by the Fleet Maintenance Manager or Operations Manager, in consultation with the Shop Supervisor and the Operator), the machine will be re-assigned to another operator.

8    All employees must read, be familiar and adhere to the Company's policies as set out in the Company policy manual(s) and employee information book and policy guidelines that are updated and published from time to time.

9.    Pay period for all employees will be Sunday to Saturday. Direct deposit will be encouraged.


## ARTICLE XVIII
## INCIDENTAL CONDITIONS

1.    Except as may be defined by a Memorandum of Understanding, hoisting machine crews shall consist of an operator and an assistant engineer/oiler. The term "hoisting machine" shall apply to all cranes, climbing cranes, tower cranes and hydraulic cranes (except hydraulic cranes of not over 70-ton rated capacity shall require an operator only). The assistant engineer/oiler on hoisting machines shall be a person who will work in harmony with the operator.

2.    Employees desiring to quit their job shall notify the Company and the Business Representative, and shall continue on the job until relieved by a competent engineer or assistant engineer/oiler.

3.    A coffee break of reasonable time shall be allowed.

11



COPY

# ARTICLE XIX
## BUSINESS REPRESENTATIVE AND STEWARDS

1.      The Business Manager(s) and/or Agent(s) and/or the International Representative of the Union shall have access with their vehicle to and on the job site of the Employer during working hours to investigate any matter or to discuss any matter regarding the application of this Collective Agreement, where the Employer has direct control of the job site.  Such visitors shall comply with general and site specific safety regulations.

2.      The Employer may require that a Business Representative or International Representative seeking access to the Employers premises shall first report to a designated person or their appointed representative before carrying out a visit and may provide an Identification Pass to be presented at an approved gate.

3.      It is agreed that the Union may appoint a job steward from among the employees of the Employer and the Employer shall be notified of the appointment in writing.

4.      Stewards shall be allowed a reasonable time to handle on site grievances during working hours without loss of pay after first seeking permission from their immediate supervisor.  This time cannot in any way disrupt the working schedule of the customer, client, or site contractor.

5.      The Steward, where possible, will be responsible for reporting any grievance to the Employer and to the Union so that it may be dealt with as soon as practicable following the first knowledge of such event.

6.      No discrimination shall be shown against any steward for carrying out his duties.


# ARTICLE XX
## ARBITRATION


1.      In case of a misunderstanding between an employee and the Company, the matter shall be referred to the Company's Representative and the Business Representative (or the Union), and the matter shall, failing adjustment, be adjusted as hereinafter provided.

2.      A joint Board of Interpretation, composed of two (2) members of each party negotiating this Agreement, shall be established to whom shall be referred any dispute arising over the discharge of an employee or the interpretation of any of their rules, and the decision of such Board shall be final. The Board to convene within three (3) work days after receipt of notice of the dispute, and is to make its decision within three (3) work days in the case of discharge, and five (5) work days in other matters.

3.      In the event of the failure of the Joint Board of Interpretation to arrive at a solution, an Umpire shall be chosen by them.  If the parties are unable to agree upon an Umpire, the matter shall be referred to the American Arbitration Association. The decision of the Umpire shall be final.  Except in cases of repudiation of this Agreement, there shall be no suspension of work or establishment of picket lines while any dispute is being adjudicated in accordance with the provisions of this Article.



## ARTICLE XXI
## JOB CLASSIFICATIONS - OPERATING

**1.**    **Class A**
Operators of hydraulic cranes with capacities of one hundred fifty (150) tons or greater and/or conventional cranes with capacities of 100 ton or greater. Small or conventional cranes with all attachments including dragline, clamshell, pile rigs, etc; heavy transporter, tower cranes.

**2.**    **Class B**
Operators of hydraulic cranes with capacities between fifty (50) and one hundred forty-nine (149) tons and conventional cranes with capacity up to 100 ton.

**3.**    **Class C**
Operators of hydraulic cranes with capacities less than fifty (50) tons, boom trucks, tractors and low-bed floats.

**4.**    **Class D**
The parties may establish a "D" classification at a rate to be determined.

**5.**    **Class E**
Operators of tractor trailers (flat-beds and step decks).

**6.**    **Class F**
Trainee, Level 2.

**7.**    **Class G**
Operators of small (½ ton) equipment; assistant engineers/oilers/helpers on crane.

**8.**    **Class H**
Ground technicians. The parties may establish this classification at a rate to be determined.

## JOB CLASSIFICATIONS - MAINTENANCE

**1.**    **Master Mechanic** - Class A

Completely overhaul diesel and gas engines, transmissions, rear ends, chassis, undercarriage, etc., with minimal supervision. Able to pass Heavy Equipment Repair or Truck & Trailer examinations with a minimum of five years at the trade.

**2.**    **Service Technician** - Class C

Same as Class A except more supervision required. Able to diagnose and correct operational defects. Should be under training program to enable him/her to reach Class A Level.

**3.**    **Trainee Mechanic, Level 1** - Class E

Carry out all normal servicing and preventative maintenance procedures and do major repairs on several component parts of machines.

**4.**    **Trainee Mechanic, Level 2** - Class G

Work under the direction of and as assistant to other mechanics on all phases of work.



## PROMOTIONAL CHART for all PROMOTIONAL DEPARTMENTS

| OPERATING DEPARTMENT | | | | | MAINTENANCE DEPARTMENT |
|---|---|---|---|---|---|
| Class "A" | - | - | - | - | Master Mechanic |
| Class "B" | - | - | - | - | - | - | - | - |
| Class "C" | - | - | - | - | Service Technician |
| Class "D" | - | - | - | - | - | - | - |
| Class "E" | - | - | - | - | Trainee Mechanic Level 1 |
| Class "F" | - | - | - | - | - | - | - |
| Class "G" | - | - | - | - | Trainee Mechanic Level 2 |

### ARTICLE XXII
### MEMORANDUM OF AGREEMENT

The parties recognized the threat of unfair competition in certain areas and types of work, from contractors who do not conform to the standards provided in the collective bargaining agreement. Therefore, within five (5) days of the bid date of any job that comes within the above category or during negotiations for a job, the Company or Association may request a pre-bid conference for the purpose of analyzing any difficulties which he may have in bidding said job. The request shall be directed to the Business Agent for the Local Union in whose jurisdiction the job falls. In the event an Agreement is reached, the terms will be reduced and transmitted by facsimile to the other party. It is expressly understood that no modification or deviation may be made from the existing collective bargaining agreement except by mutual agreement of the parties. It is further understood that no matter arising hereunder shall be subject to arbitration. It is the intent of the parties that this procedure will be utilized where circumstances warrant and that the Company will not abuse this procedure.

14

## ARTICLE XXIII
## SCHEDULE OF WAGES



| | 10/14/02 | 3/1/2003 | 6/1/2003* | 12/1/2003* | |
|---|---|---|---|---|---|
| CLASS "A" OPERATOR MASTER MECHANIC | 22.51 | 22.58 | 23.33 | 24.08 | |
| CLASS "B" OPERATOR | 21.73 | 21.78 | 22.50 | 23.22 | |
| CLASS "C" OPERATOR SERVICE TECHNICIAN | 20.96 | 20.99 | 21.69 | 22.39 | |
| CLASS "D" OPERATOR | -- | -- | -- | -- | |
| TRAINEE MECHANIC LEVEL 1 FRONT-END LOADER AND TRACTOR TRAILER OPERATORS | 18.37 | 18.34 | 18.95 | 19.56 | |
| OPERATOR TRAINEE | 17.60 | 17.56 | 18.14 | 18.72 | |
| TRAINEE MECHANIC LEVEL 2 ASSISTANT ENGINEER/ OILER | 16.05 | 15.97 | 16.50 | 17.03 | |
| Boom Wage Additive** | | | | | |
| Over 210' | 1.26 | 1.29 | 1.33 | 1.37 | |
| Over 295' | 2.07 | 2.14 | 2.21 | 2.28 | |
| Health & Welfare | 4.30 | 4.75 | 4.75 | 4.75 | |
| Pension | 3.82 | 3.82 | 3.82 | 3.82 | |
| Annuity | 2.50 | 2.50 | 2.50 | 2.50 | |

Dues Deduction:                        1 1/4 % of total wage and benefit package.

Social and Political Action Committees:     $0.05 per payroll hour.

Daily Rate Differential:                   11% of the wage portion of the package.

\*      The Local may, at its option, utilize parts of these increments for increases to Health & Welfare, Pension, Annuity Funds or Dues Deduction.

Engineers and assistant engineers/oilers assigned on a daily basis shall receive an 11% wage differential.

\*\*     Engineers receiving boom wage additive shall be paid such rate for the full day, even though the boom length may be shortened.



# *MEMORANDUM OF UNDERSTANDING*

## *MOORES CRANE RENTAL, CORP.*

---

Whereas, **Moores Crane Rental Corp.** and the International Union of Operating Engineers Local 4 are parties to a Collective Bargaining Agreement in the states of Maine and New Hampshire; and

Whereas; the parties acknowledge the existence of both a primary construction market and a predominately unorganized general rental and secondary construction market; and

Whereas; the parties to the Agreement also acknowledge the extremely competitive nature of the crane rental industry in this secondary market; and

Whereas; the parties to the Agreement are desirous of maximizing both the crane rental opportunities for the Company and the work opportunities for the employees, now there be it

Resolved; that the parties enter into this Memorandum of Understanding to address issues that may impede rentals in this secondary market and agree to modify the provisions of the Collective Bargaining Agreement to meet the challenges of this secondary market as follows:

- The Employer will determine "hoisting machine" crew size on all hydraulic cranes up to and including cranes of 165-ton capacity;

- The parties to this Agreement acknowledge that there may be a need for operational coverage on the following holidays: President's Day, Columbus Day and Veteran's Day. Without regard to regular assignments, employees may be required to work two (2) of these holidays. Two floating holidays (Mondays or Fridays) will be observed to compensate employees for working these days. Floating holidays must be taken, or bought back, in the calendar year.

- Notwithstanding all of the above, the parties acknowledge there may also be a need to maintain close collaboration to address other market factors.

Pursuant to this Memorandum of Understanding, it is further agreed that for crane work performed on a Saturday, with cranes of 50 ton capacity or less, the operator shall be paid either a four (4) or eight (8) hour minimum based on elapsed rental time applied for the crane, at the overtime rate of time and one-half. This provision applies to residential work performed in New Hampshire and Maine.

16

COPY **IN WITNESS WHEREOF,** the parties hereto have caused these present to be signed by their duly authorized representatives and have affixed hereto the seals and signatures of their respective organizations, the day and year first above written.

For

**MOORES CRANE RENTAL, CORP.**

For

**INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4 AND ITS BRANCHES**

By  Hadley Moores          Title

**Business Manager**

By                              Title

33 Littleworth Road

**Address**

**President**

Dover, NH 03820

**City      State/Province    Country    Zip**

603-740-3613          603-742-0183

**Phone                  Fax**

**Recording Secretary**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. **TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)** Louis G. Rasetta and John H. Shaughnessy, as they are Trustees, I.U.O.E. Local 4 Health and Welfare Funds, et al vs. Moore's Crane Rental Corp. and Hadley Moore

2. **CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).**

    \_\_\_   I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    X   II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
                  740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

    \_\_\_   III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                   315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                   380, 385, 450, 891.

    \_\_\_   IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                   690, 810, 861-865, 870, 871, 875, 900.

    \_\_\_   V.   150, 152, 153.

3. **TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).**
   N/A

4. **HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?**    YES ☐    NO ☒

5. **DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC 2403)**    YES ☐    NO ☒
   **IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?**    YES ☐    NO ☐

6. **IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284?**    YES ☐    NO ☒

7. **DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).**    YES ☐    NO ☒
   **OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? - (SEE LOCAL RULE 40.1(D)).**    YES ☐    NO ☒

8. **DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF THE DISTRICT?**    YES ☐    NO ☒
   (a)    **IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE?** _____

9. **IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?** N/A

10. **IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE CENTRAL SECTION:** YES ☐ NO ☐ N/A   **OR WESTERN SECTION:** YES ☐  NO ☐

**(PLEASE TYPE OR PRINT)**

**ATTORNEY'S NAME** Anne R. Sills

**ADDRESS** Segal, Roitman & Coleman, 11 Beacon Street, Suite #500, Boston, MA  02108

**TELEPHONE NO.** (617) 742-0208

(Categform.rev - 3/97)

05.10031 DPW

JS 44
(Rev. 12/96)

# CIVIL COVER SHEE₁

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as requir▯ by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the u▯ of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

LOUIS G. RASETTA and JOHN J. SHAUGHNESSY, as they are TRUSTEES, INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 4 HEALTH AND WELFARE, PENSION AND ANNUITY FUNDS, and LOUIS G. RASETTA and CHRISTOPHER BARLETTA, as they are TRUSTEES, HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICE AND TRAINING FUNDS and INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 4,

## DEFENDANTS

Moore's Crane Rental Corp. and Hadley Moore

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES. USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
Anne R. Sills, Esquire
Segal, Roitman & Coleman
11 Beacon Street, Suite #500
Boston, MA  02108

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINT▯ AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DE▯ |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to Dist▯
Judge from
Magistrate
Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | | | ☐ 863 DWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Ju▯ |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | | |
| | | ☐ 555 Prison Condition | | | | |

(☒ 791 Empl. Ret. Inc. Security Act)

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

This is a claim to collect unpaid benefit fund contributions, brought pursuant to ERISA, 29 U.S.C. Sec. 1132.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complai▯
JURY DEMAND:    ☐ YES    ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY    N/A

JUDGE _____    DOCKET NUMBER _____

DATE
1/5/5    *Anne R Sills*

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____