UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

LOUIS G. RASETTA and JOHN J. SHAUGHNESSY, as they are TRUSTEES, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4 HEALTH AND WELFARE, PENSION AND ANNUITY AND ANNUITY SAVINGS FUNDS, and LOUIS G. RASETTA and CHRISTOPHER BARLETTA, as they are TRUSTEES, HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICE AND TRAINING FUNDS and the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4, DPW

   Plaintiffs

vs.

MOORE'S CRANE RENTAL CORP. and HADLEY MOORE,

   Defendants

and

KENNEBUNK SAVINGS BANK,
   Trustee

C.A. No. 05-10031

---

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTACHMENT OF PERSONAL PROPERTY OF DEFENDANT MOORE'S CRANE RENTAL CORP. (WITH NOTICE)**

  This is an action to enforce the terms of a collective bargaining agreement and the terms of employee benefit plans.

  Pursuant to Rule 64, Fed.R.Civ.P., M.G.L. c. 223, and Rule 4.1 Mass.R.Civ.P., Plaintiffs Louis G. Rasetta and John J. Shaughnessy, as they are Trustees, et al, are entitled to an attachment of the Defendant's personal property if they can demonstrate that they are reasonably likely to recover judgment in an amount equal to or greater than the amount of the attachment

over and above any liability insurance shown by the Defendant to be available to satisfy the judgment.  See International Ass'n of Bridge, Structural and Ornamental Iron Workers, Shopmen's Local Union 501 v. Burtman Iron Works, Inc., 164 F.R.D. 305, 306 (D.Mass. 1995).  For the reasons stated below, Plaintiffs have satisfied the requirements for an Order of Attachment of the personal property of Moore's Crane Rental Corp., Inc. ("Moore's Crane").  Specifically, Plaintiffs seek the attachment of the following property, owned by the company and utilized for business purposes:

Cranes

1. 2000 Link-Belt, Model 8670, Serial #F2JO-4863/HTCF2485
2. 2002 GMK, Model 5240, Serial #5208186
3. 2002 GMK, Model 4075, Serial #40759122
4. 2001 GMK Model 5100, Serial #51009139
5. 2001 Sterling Boom Truck, VIN #ZFZHAZAS41AH56320

See Affidavit of James Bucci ("Bucci Aff."), par. 2.  Further, the Funds seek the attachment of any other cranes currently owned by Moore's Crane and previously utilized for business purposes of which the Funds are unaware.

I.  **PLAINTIFFS HAVE DEMONSTRATED A REASONABLE LIKELIHOOD OF PREVAILING ON THE MERITS OF THEIR CLAIMS AGAINST THE DEFENDANT.**

On or about October 12, 2002, defendant Moore's Crane Rental Corp. ("Moore's Crane") agreed in writing to be bound to the terms of a collective bargaining agreement with the Union, effective from October, 2002 through May, 2004 ("the Agreement") and to any successor agreements.  See Affidavit of Louis G. Rasetta ("Rasetta Aff."), par. 2.  The Agreement requires Moore's Crane to make contributions to Plaintiff Funds and to the Social Action Committee ("SAC"), in amounts set forth in the Agreement, for each payroll hour and proportionately for each part of such an hour for each person covered by the Agreement and employed on

2

construction projects on which the Company is engaged.  Rasetta Aff., par. 3.  Pursuant to the Agreement, Moore's Crane is also obligated to deduct and remit a negotiated percentage of the gross wage package, before taxes, for union dues.  Id.  Further, the Agreement obligates Moore's Crane, upon written authorization by its employees, to withhold an amount from the employee's gross wage, before taxes, for deposit in the Annuity & Savings 401(k) Fund.  Rasetta Aff., par. 4.

The instant suit was filed on January 5, 2005 for fringe benefit contributions due and owing from Moore's Crane to the Funds.  Rasetta Aff., par. 5.  The parties entered into a Settlement Agreement on or about July 21, 2005, at which time Moore's Crane remitted contributions owed the Funds through November, 2004.  Rasetta Aff., par. 6.  Yet, by the time the Settlement Agreement was executed, Moore's Crane had already amassed a new delinquency dating back to December, 2004.  Rasetta Aff., par. 7.  However, Paragraphs 4 and 5 of the Settlement Agreement stated that an audit would be conducted for the period May, 2004 through the date of the audit, and that the parties would enter into a payment plan for any amounts found due and owing for that period of time.  Rasetta Aff., par. 8.

The parties' first agreed-upon audit date, September 23, 2005, proved unsuccessful because when the Funds' auditor arrived at Moore's Crane's place of business, the Defendant's employee was unable to print the necessary weekly payroll reports from the company's computer system.  Rasetta Aff., par. 9.  The parties scheduled a second audit date, for October 24, 2005, which was also postponed by Moore's Crane.  Id.  After the parties' Settlement Agreement was executed, this honorable Court had entered a Settlement Order of Dismissal which stated that the parties had 90 days to reopen the action if the settlement was not consummated.  As such, after the second audit date was postponed, the Plaintiffs filed a Motion to Reopen Case which was granted by this Court on November 29, 2005.

On December 5, 2005, the Funds' auditor finally gained access to Moore's Crane's payroll records and proceeded with his examination of said records. Rasetta Aff., par. 10. The auditor discovered an additional $2,061.40 in contributions owed the Funds through the end of 2004. Id. Unfortunately, the auditor failed to review Moore's Crane's payroll records for the year 2005. Rasetta Aff., par. 11. The Funds are currently seeking to have an auditor return to Moore's Crane to review the 2005 records and complete the audit but have not yet been able to do so because of recent turnover with regard to their auditing staff. Id. The Funds will continue to strive to have Moore's Crane's 2005 payroll records reviewed – and the audit completed – as soon as possible. Id.

However, even though the audit has not been completed, the Funds assert that contributions are due them for the months of December, 2004, February, 2005, and May through December, 2005. Moore's Crane has failed and refused to submit contributions or remittance reports for these months. Rasetta Aff., par. 12. Yet, upon information and belief, Moore's Crane has conducted work using Local 4 Operators for each of the aforementioned months. Rasetta Aff., par. 15. Further, and most importantly, the president of Moore's Crane, Hadley Moore, informed the Union's Business Manager, Louis G. Rasetta, in a telephone call on January 31, 2006 that Moore's Crane owes $150,000.00 in fringe benefit contributions to the Funds. Rasetta Aff., par. 14. This admission came two weeks after Mr. Moore promised – but failed – to deliver to the Funds a partial payment of contributions owed by his company totaling $100,000.00. Rasetta Aff., par. 16. Further, on February 1, 2006, Mr. Moore sent a faxed letter to Mr. Rasetta, a copy of which is attached hereto as Exhibit A, in which he stated as follows:

> I want you to know that I am serious about paying the benefits in full. I have the money and the check is cut ready to mail. The amount is $101,044.56 subject to your audit.

4

Because he has not supplied the appropriate remittance reports to the Funds for work done during the months in question, only Mr. Moore knows for sure how many hours were worked by his employees, and thus, what amount in contributions is owed. And, as detailed above, Mr. Moore has shared his accounting of the amount owed the Funds. On two different occasions, Mr. Moore informed Mr. Rasetta that he was prepared to pay approximately $100,000.00 for contributions owed to the Funds. On a third occasion, he informed Mr. Rasetta that Moore's Crane owed $150,000.00 in contributions to the Funds. It is entirely reasonable for this Court to accept the word of Moore's Crane's president as to what amount is owed the Funds. Again, only Mr. Moore had access to the relevant payroll records. Further, while it is conceivable that Mr. Moore would downplay the amount owed, or deny that *any* amount is owed, there is absolutely no conceivable reason that he would inform the Union's Business Manager that $150,000.00 is owed the Funds if it were not, especially in light of the ongoing litigation. This is especially true given that Mr. Moore made his admission during a telephone conversation in which he was essentially seeking to wrap up his business relationship with the Funds and to give a full accounting of what is owed.

It is imperative that this honorable Court rely on Mr. Moore's admission as to the amount owed by his company because the Funds must receive an attachment on Moore's cranes sooner than their auditor will be able to complete his audit of Moore's Crane's 2005 records. Time is of the essence because of Mr. Moore's statement to Mr. Rasetta in their January 31, 2006 telephone conversation that Moore's Crane will be selling its cranes. Rasetta Aff., par. 18. Given that Moore's Crane is going out of business, and that it has not seen fit to pay contributions dating back to April, 2005, there is no reason to believe that the company currently possesses the financial resources necessary to allow it to pay the contributions owed short of the proceeds from

the sale of its cranes. Further, given Moore's Crane's history of delinquency to the Funds, and given its failed promise to deliver a check for $100,000.00 to Mr. Rasetta at their mid-January meeting, there is no reason to believe that Moore's Crane can be trusted to keep its word and to pay the contributions owed short of the attachment of the cranes being requested by the Funds herein.

II.     **PLAINTIFFS ARE LIKELY TO RECOVER AN AMOUNT GREATER THAN THE AMOUNT OF THE ATTACHMENT THEY SEEK.**

Section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1132, provides that in any action brought to enforce §1145 of ERISA, the Court shall award the Plan the unpaid contributions, interest on the unpaid contributions, an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provided for under the Plan, reasonable attorneys' fees and costs, and such other legal or equitable action as the Court deems appropriate. As stated above, Moore's Crane's president has admitted to owing $150,000.00 in fringe benefit contributions to the Funds. The Funds cannot calculate the interest and liquidated damages owed on the $150,000.00 delinquency until they conduct a payroll audit for 2005 and receive a month-by-month breakdown of the amount owed. However, the Funds can report that, to date, they have incurred attorney's fees and costs totaling $8,437.25. Affidavit of Anne R. Sills., par. 2.

Thus, in total, the evidence is sufficient to find that Moore's Crane is currently liable for $150,000.00 in fringe benefit contributions and $8,437.25 in fees and costs, for a total of $158,437.25. The Funds seek an attachment of Moore's cranes, as listed above, up to the amount of $158,437.25, plus any further amounts found to be owed once the payroll audit is completed, plus statutory interest and liquidated damages.

### III. DEFENDANT HAS INSUFFICIENT INSURANCE TO COVER PLAINTIFFS' CLAIMS.

As this is a contract claim, insurance would generally not be available to the Defendant and an attachment of Moore's Crane's property is therefore allowable. In any event, the burden is on the Defendant to show the existence of liability insurance to satisfy a prospective judgment. Johnson v. Harris, 1991 WL 226331, *2 (D.Mass. 1991).

### IV. ALTERNATIVELY, PLAINTIFFS SEEK AN INJUNCTION RESTRAINING THE DISTRIBUTION OF THE PROCEEDS OF ANY SALE OF MOORE'S CRANES.

If this honorable Court will not grant the Funds an attachment of Moore's cranes, as requested above, then the Funds request in the alternative that this Court grant a preliminary injunction restraining the distribution of the proceeds of any sale of Moore's cranes.

Injunctive relief is specifically authorized by §502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). Laborers' Fringe Benefit Funds, Detroit and Vicinity v. Northwest Concrete & Construction, Inc., 640 F.2d 1350, 1352 (6th Cir. 1981) ("Northwest Concrete"). The standard to be used by the district court in ruling on whether to grant a preliminary injunction is well established.

> In deciding whether to grant a preliminary injunction, a district court must weigh the following four factors: 1) the likelihood of the movant's success on the merits; 2) the potential for irreparable harm to the movant; 3) a balancing of the relevant equities, i.e. "the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld", Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); and 4) the effect on the public interest of a grant or denial of the injunction.

Gately v. Comm. of Mass., 2 F.3d 1221, 1224 (1st Cir. 1993), cert. denied, 114 S.Ct. 1832 (1994) ("Gately"); Caroline T. v. Hudson School Dist., 915 F.2d 752, 754-755 (1st Cir. 1990);

Agency Rent-A-Car, Inc. v. Connolly, 686 F.2d 1029, 1034 (1st Cir. 1982). Examination of each of these factors establishes that plaintiffs are entitled to the relief requested.

### 1) Likelihood of Success

As discussed above, given Moore's Crane's obligations under the Agreement to which it is signatory, and given that Mr. Moore has admitted to owing $150,000.00 in contributions to the Funds, the Plaintiffs will succeed on the merits of this case.

### 2) Irreparable Harm

If Moore's Crane was to distribute the proceeds of any sale of its cranes, given its history of non-payment to the Funds, it would render the Funds unable to fully satisfy their fiduciary and statutory obligations to their beneficiaries and participants. "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled . . ." Central States Pension Fund, 472 U.S. at 571. The Funds are entitled to contributions for all work performed by Moore's Crane's employees.

### 3) Balancing of Harms

"The heart of the matter is whether 'the harm caused plaintiff without the injunction, in light of the plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause defendants.'" Gately, supra, 2 F.3d at 1225, quoting Vargas-Figueroa v. Saldana, 826 F.2d 160, 162 (lst Cir. l987) (emphasis in original).

No harm can come to Moore's Crane by being enjoined from disbursing money that it admittedly owes the Funds. Meanwhile, the harm to the Funds of not receiving the contributions to which they are entitled is great. The demonstrated harm to the Funds far outweighs any harm to the Defendant.

**4)** **Public Interest**

Congress declared it to be the policy of ERISA to "protect . . . the interest of participants in employee benefit plans and their beneficiaries . . . by providing for appropriate remedies, sanctions, and ready access to Federal courts." 29 U.S.C. §1001(b). The House Report on the Act's enforcement provisions states that they are

> designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act. The intent of the committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities . . .

H.R. Rep. No. 93-533, 93d Cong., 2d Sess. 17, reprinted in [1974] U.S. Code Cong. & Ad. News, p. 4639, 4655.

The federal courts have interpreted this legislative history as "unambiguous evidence" that Section 502's enforcement provisions are intended to "have teeth" and to be "liberally construed." Northwest Concrete, supra, at 1352. "Given the array of remedies that ERISA provides for redressing and preventing violations of the statute, it is not surprising that federal courts have frequently resorted to injunctive relief when it has been perceived as necessary to fully protect the statutory and contractual rights of Fund participants and beneficiaries." Metropolitan D.C. Paving Industry Employees Health and Welfare Trust Fund v. Jones & Artis Construction Co., 2 EBC 2227, 2223 (D. D.C., 1991).

"Congress made it abundantly clear that an employer would not be permitted to circumvent or ignore its funds, payment and other obligations under ERISA." A & G, citing Northwest Concrete, supra, at 1352. The public interest in preserving the integrity of employee pension, health, and welfare plans would be furthered by issuance of the preliminary injunction.

9

**V.     CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court allow their Motion for Attachment of Personal Property of the Defendant.

Respectfully submitted,

LOUIS G. RASETTA and JOHN J. SHAUGHNESSY, as they are TRUSTEES, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4 HEALTH AND WELFARE FUND, et al,

By their attorneys,

/s/ Gregory A. Geiman
Anne R. Sills, Esquire
BBO #546576
Gregory A. Geiman, Esquire
BBO #655207
Segal, Roitman & Coleman
11 Beacon Street
Suite #500
Boston, MA  02108
(617) 742-0208

Dated:  February 1, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Memorandum in Support of Motion for Attachment of Personal Property has been served by first class mail upon the defendants, Moore's Crane Rental Corp. and Hadley Moore, by their attorney Louis Butterfield at Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, P.O. Box #9729, Portland, ME  04104  this 1st day of February, 2006.

/s/ Gregory A. Geiman
Gregory A. Geiman, Esquire

GAG/gag&ts
ARS 3118 05-016/memo-attachpersprop.doc

10

# Moores Crane Rental

26-240 Ton Hydraulic
Modular Homes
Steel Erection
HVAC Units
Trusses
Precast Concrete

33 Littleworth Road
Dover, NH 03820
Tel: 603-740-3613
Fax: 603-742-0183

## Facsimile

DATE: Feb 1st 2006           TOTAL PAGES: 1

TO: Louis Rasetta            COMPANY: Local 4

FROM: Hadley Moore           SENT TO FAX#: 508-533-1430

RE: _____

Lou,
I want you to know that I am serious about paying the Benefits in full. I have the money and the check is cut ready to mail. The amount is $10,044.56 subject to your audit. Thank you

Hadley